403 F.2d 939
 James J. CAMPBELL, as Administrator of the Estate of
Margaret C. Campbell, Deceased, Plaintiff, James
J. Campbell and Marjorie Campbell,
Plaintiffs-Appellants,
v.
WESTMORELAND FARM, INC., James A. Roe, Sr., James A. Roe,
Jr., Marie Roe, Frances Kesler, Fred Hansen, John H. Biedul,
Defendants-Appellees, Vincent Caccese, Sr., Vincent Caccese,
Jr., and Thomas O'Brien, Defendants.
 No. 7, Docket 32190.
 United States Court of Appeals Second Circuit.
 Argued Sept. 5, 1968.
Decided Nov. 15, 1968.
 
 Norman H. Dachs, Mineola, N.Y. (Shayne, Dachs, Weiss, Kolbrener & Levy, Mineola, N.Y., on the brief), for plaintiffs-appellants.
 Patrick J. Hughes, New York City (Daniel J. Coughlin, New York City, on the brief), for defendants-appellees.
 Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This is an appeal from an order dismissing two of three causes of action as to seven of ten named defendants. It arises in the context of a rather unusual wrongful death action.
 
 
 2
 Plaintiffs are the parents of a young girl who was killed in a hit-and-run accident in Suffolk County, New York. They were not in any way involved in the accident. In addition to the wrongful death recovery, plaintiffs are demanding damages for their own mental suffering, which they say was caused not by the death of their daughter but by the illegal conduct of the hit-and-run driver. More specifically, they say that because the hit-and-run driver did not identify himself as required by New York law, this 'set in motion the chain of events' which led to police investigations, a grand jury inquiry, substantial newspaper publicity, and ultimately to a coronary attack suffered by the father. Since the New York wrongful death statute precludes recovery for mental suffering,[1] plaintiffs have predicated their second and third causes of action on a novel interpretation of section 600 of the New York Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71,[2] which they say creates 'a post-accident tort' distinct from the wrongful death claim.
 
 
 3
 Judge Bartels dismissed plaintiffs' second and third causes of action, holding that the New York hit-and-run statute did not create a post-accident cause of action, and plaintiffs appealed. The order appealed from did not dismiss the post-accident tort claims as to all of the named defendants, however, because three had not been served in the action at the time the motion to dismiss was made.
 
 
 4
 On October 13, 1967 we dismissed plaintiffs' appeal because Judge Bartels had not made the requisite finding of finality under Rule 54(b) of the Federal Rules of Civil Procedure. While we did not write an opinion, we think it is perfectly clear that absent a Rule 54(b) certificate the order was not appealable. 'If the district court adjudicates one or more but less than all of the multiple claims that adjudication is interlocutory where the district court has made no certificate.' 6 Moore, Federal Practice P54.28 at 219-220 (1965 ed.).
 
 
 5
 Plaintiffs then went back to Judge Bartels, who expressed some doubts as to whether the order was appealable even with a Rule 54(b) certificate. He did, however, make the requisite finding that there was 'no just reason for delay,' and directed entry of final judgment on dismissal of the post-accident tort claims.
 
 
 6
 Judge Bartels was apparently bothered by the fact that plaintiffs' claims arose out of a single factual occurrence. While we think he was correct in finding multiple claims within the meaning of Rule 54(b), we hold that it was an abuse of discretion to certify the post-accident causes of action for immediate appeal. Given the unusual circumstances of this case, we do not think any hardship or injustice would result if the plaintiffs were required to try the wrongful death claim before taking their appeal.
 
 
 7
 In Rieser v. Baltimore & Ohio Railroad Co., 224 F.2d 198, 199 (2d Cir. 1955), cert. denied 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956), we said: 'The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced.' Applying this test, we believe there are separate claims involved here.[3] The claims could have been separately enforced, and indeed, if the New York hit-and-run statute creates a post-accident cause of action, there is the possibility of separate recoveries. This is not a case where plaintiffs' claims are variations on a single legal theory. Cf. RePass v. Vreeland, 357 F.2d 801 (3d Cir. 1966). Nor is this a case where plaintiffs are limited to a single recovery. Cf. Rabekoff v. Lazere & Co., 323 F.2d 865 (2d Cir. 1963).
 
 
 8
 Recovery on the post-accident claims is in no way dependent on a favorable judgment in the wrongful death action, since the New York hit-and-run statute makes no distinction between negligent and non-negligent drivers and requires both to identify themselves and report the accident to the police. People v. Orr, 138 Misc. 535, 246 N.Y.S. 673 (1930). If, for example, plaintiffs' daughter had been guilty of contributory negligence, this would presumably bar the wrongful death action without affecting recovery on the post-accident claims. Different aggregates of operative facts will therefore determine the result. Original Ballet Russe, Ltd. v. Ballet Theatre, Inc., 133 F.2d 187, 189 (2d Cir. 1943). See also Gottesman v. General Motors Corp., 401 F.2d 510 (2d Cir. July 18, 1968). Plaintiffs' recoveries are also separate in the sense that the wrongful death action is brought in a representative capacity, while the rights asserted in the post-accident claims are individual.
 
 
 9
 Since Rule 54(b) was specifically amended in 1961 to allow appeals in multi-party cases, the fact that Judge Bartels' order dismissed only seven of the ten named defendants is not by itself fatal to the procedure plaintiffs have followed.[4] A literal reading of amended Rule 54(b) would seem to permit certification where the trial judge has disposed of less than all of the claims as to less than all of the parties, and indeed, this would be consistent with the salutary purpose of Rule 54(b).[5] Before the trial judge may make a finding of finality, however, the words of Rule 54(b) require that there be 'no just reason for delay.' In other words, there must be some danger of hardship or injustice through delay which would be alleviated by immediate appeal.
 
 
 10
 In certifying questions for appeal under Rule 54(b), the district court acts as the 'dispatcher' in determining when each final decision is ready for appeal. Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 435, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). This does not mean, however, that certification is automatic in every situation where there is a partial adjudication of multiple claims. Indeed, the Supreme Court has said that an appellate court may dismiss an appeal from a judgment certified pursuant to Rule 54(b) if the trial court abused its discretion in certifying the order. Sears, Roebuck & Co. v. Mackey, supra at 437, 76 S.Ct. 895. Similarly, the Third Circuit has warned that Rule 54(b) orders 'should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only 'in the infrequent harsh case' as an instrument for the improved administration of justice * * *' Panichella v. Pennsylvania Railroad Co., 252 F.2d 452, 455 (3d Cir. 1958). See also Columbia Broadcasting System, Inc. v. Amana Refrigeration, Inc., 271 F.2d 257 (7th Cir. 1959), cert. denied 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960).
 
 
 11
 Under the circumstances of this case, interlocutory appeal simply delays trial of the wrongful death claim. There are no countervailing benefits. This is not a case where immediate appeal would 'eliminate much unnecessary evidence, confine the issues, shorten the trial, save much expense to the litigants in connection with the preparation for trial and contribute considerably to expediting the work of the (trial) court.' Combined Bronx Amusements, Inc. v. Warner Bros. Pictures, Inc., 132 F.Supp. 921, 922 (S.D.N.Y.1955). Nor is this a situation where plaintiffs' recovery would be jeopardized or prejudiced if they had to await trial of the wrongful death claim before appealing from the order dismissing the post-accident causes of action. Cf. Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., 243 F.2d 795, 796 (2d Cir. 1957), where we said: 'We cannot decide the issues intelligently piecemeal and, if we so attempt, are sure to find ourselves uttering pious generalities only which will come back to plague us later.'
 
 
 12
 There is another reason why we should not decide the post-accident tort question now. At this point in the litigation, the plaintiffs are not even certain who was the driver of the vehicle which struck their daughter, and not only the post-accident tort question, but the wrongful death claim as well, will become moot if the plaintiffs have in fact sued the wrong defendants. Despite extensive investigations, the Suffolk County police were unable to establish the identity of the hit-and-run driver, and thus plaintiffs are in the awkward position of suing ten defendants alternatively and hoping that the identity of the guilty party will come out during pretrial discovery. Two of the defendants have already died.
 
 
 13
 Appellate review at this time, then, only keeps us guessing as to which, if any, of these defendants is liable for the hit-and-run death of plaintiffs' daughter. We sympathize with plaintiffs' predicament. Nonetheless, if they cannot establish the identity of the driver and/or owner, we accomplish little by appellate review except render a wholly advisory opinion on a question of New York law which had never been raised in the New York courts and which might best be settled more authoritatively by the courts of that state.
 
 
 14
 Tempting as it is to decide this intriguing question of New York tort law, we respectfully decline the invitation. Since Judge Bartels' order is still not properly appealable, we think we ought not 'obliquely express our views on the merits since, in doing so, we are giving a mere advisory opinion, forbidden by the Constitution.' Pabellon v. Grace Line, Inc., 191 F.2d 169, 180 (2d Cir.) (Frank, J., concurring), cert. denied 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951).
 
 
 15
 For the reasons stated above, we do not think that Judge Bartels' order is appealable under 28 U.S.C. 1292(b).
 
 
 16
 We therefore vacate the order under Rule 54(b), remand the case to the District Court, and suggest that in the present posture of this case the interests of justice would appear to be best and most expeditiously served if the wrongful death claim is tried first. Eventual success on the post-accident claims must rest, after all, on establishing the identity of the actor or actors in the death.
 
 
 17
 Appeal dismissed.
 
 
 
 [1]
 The action for wrongful death was brought under N.Y. Decedent Estate Law, McKinney's Consol.Laws, c. 13 130-133. Section 132 specifically limits recovery in wrongful death actions to pecuniary damages resulting from decedent's death, and that section has been construed by the New York courts to bar recovery for mental and emotional suffering. See, for example, Fornaro v. Jill Bros., Inc., 42 Misc.2d 1031, 249 N.Y.S.2d 833 (Sup.Ct.1964), reversed on other grounds, 22 A.D.2d 695, 253 N.Y.S.2d 771 (2d Dept.1964), aff'd, 15 N.Y.2d 819, 257 N.Y.S.2d 938, 205 N.E.2d 862 (1965). Cf. Pearson v. Northeast Airlines, Inc., 309 F.2d 553, 564 (2d Cir. 1962) (en banc), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963), where we held that the New York wrongful death statute measures damages by 'the extent of the pecuniary loss sustained by the dependents.'
 
 
 [2]
 Section 600 reads in pertinent part:
 Any person operating a motor vehicle or motorcycle who, knowing that injury has been caused to a person, due to the culpability of the person operating such motor vehicle or motorcycle, or to accident, leaves the place of said injury or accident, without stopping, exhibiting his license and giving his name, residence, including street and street number, and license number, to the injured party and also to a police officer, or in case no police officer is in the vicinity of the place of said injury or accident, then reporting as soon as physically able the same to the nearest police station or judicial officer, is guilty of a misdemeanor.
 
 
 [3]
 In Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478 (1942), the Supreme Court held that 'differing occurrences or transactions' form the basis of 'separate units of judicial action' appealable under Rule 54(b). The Reeves case, however, was decided prior to the 1946 amendments to Rule 54(b). The 1946 amendments deleted the reference to the 'same transaction or occurrence' and authorized certification of one or more but fewer than all the claims whenever 'more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim.'
 In Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), and Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), the Supreme Court expressly rejected the proposition that there cannot be multiple claims where there is a single underlying occurrence or transaction. In Cold Metal, for example, the Court said: 'If the District Court certifies a final order on a claim which arises out of the same transaction and occurrence as pending claims, and the Court of Appeals is satisfied that there has been no abuse of discretion, the order is appealable.' Id. at 452, 76 S.Ct. at 909.
 See also 3 Barron & Holtzoff, Federal Practice and Procedure 1193 at 28 (Wright ed. 1958), where Prof. Wright says: 'A single claimant presents multiple claims for relief when his possible recoveries are more than one in number and not mutually exclusive.'
 
 
 [4]
 In its original form, Rule 54(b) looked at the problem of finality from the point of view of multiple claims rather than multiple parties. 6 Moore, Federal Practice P54.27 (1965 ed.). Prior to 1961, therefore, we held that Rule 54(b) did not allow the trial judge to make a finding of finality in cases 'where a single claim against multiple parties is dismissed as against some but not all.' Goldlawr v. Heiman, 273 F.2d 729, 730 (2d Cir. 1959). See also Steiner v. Twentieth Century Fox Film Corp., 220 F.2d 105 (9th Cir. 1955). In 1961, however, Rule 54(b) was amended to allow appeals in multi-party cases, since it had been apparent for some time that the need for immediate appeal could be just as great in multi-party as in multi-claim litigation. See, for example, Developments in the Law-- Multiparty Litigation, 71 Harv.L.Rev. 874, 981 (1958); Note, 62 Yale L.J. 263, 271 (1953). For examples of hardship resulting in the multiparty situation prior to the 1961 amendment, see Pabellon v. Grace Line, Inc., 191 F.2d 169 (2d Cir.) (Frank, J., concurring), cert. denied 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951)
 
 
 [5]
 See Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511-512, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950):
 'The liberalization of our practice to allow more issues and parties to be joined in one action and to expand the privilege of intervention by those not originally parties has increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had. In recognition of this difficulty, Rule 54(b), Federal Rules of Civil Procedure, 28 U.S.C.A., was promulgated.'